Alexander P. McLaughlin, ISB No. 7977
Melodie A. McQuade, ISB No. 9433
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho  83701-2720
Office: (208) 388-1200
Fax: (208) 388-1300
apm@givenspursley.com
mam@givenspursley.com
14907591_1 [14961.1]

Jacinta L. Alves (*pro hac vice* pending)
Laurel Pyke Malson (*pro hac vice* pending)
Stephen J. McBrady (*pro hac vice* pending)
Brian C. Lewis (*pro hac vice* pending)
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:	(202) 624-2500
Facsimile:	(202) 628-5611
Email:	jalves@crowell.com
	lmalson@crowell.com
	smcbrady@crowell.com
	blewis@crowell.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAINE COMMUNITY HEALTH OPTIONS,<br><br>            Plaintiff,<br><br>    v.<br><br>ALBERTSONS COMPANIES, INC.,<br><br>            Defendant. | Case No. _____<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 1**

# INTRODUCTION

Plaintiff, Maine Community Health Options ("Health Options") served Defendant, Albertsons Companies, Inc. ("Albertsons"), on October 18, 2019, with an amended third-party subpoena issued by The Hon. Myra Selby and The Hon. Jeffrey Keyes, panel arbitrators in a pending proceeding (the "Subpoena"), requiring Albertsons' attendance and production of documents at an arbitration hearing in Boise, Idaho. See Exhibit A to the Declaration of Jacinta L. Alves In Support Of Plaintiff's Motion To Enforce Third-Party Arbitration Subpoena, filed concurrently herewith (the "Alves Declaration"). The arbitration panel issued the narrowly tailored Subpoena pursuant to its authority under the Federal Arbitration Act ("FAA"). Albertsons has refused to comply without an order from this Court enforcing the Subpoena.

# FACTUAL AND PROCEDURAL BACKGROUND

Health Options is a non-profit community health plan, established under the Affordable Care Act as a Consumer Operated and Oriented Plan insurer to create affordable, high quality benefits that promote health and well-being for its members in Maine.

Health Options commenced the underlying arbitration against Navitus Health Solutions, LLC ("Navitus") in March 2018, to recover millions of dollars in reimbursement charges improperly billed by Navitus—and paid by Health Options—for pharmaceutical drugs sold through Navitus' retail pharmacy network to Health Options' members. The claims at issue relate, in part, to Navitus' misrepresentation of "usual and customary" ("U&C") prices charged by its network pharmacies (which includes Albertsons) for thousands of prescription drugs purchased by Health Options' members. In its Arbitration Demand, Health Options alleged that Navitus used inflated U&C prices to determine the reimbursement charges for the drugs purchased by Health Options' members. Navitus' use of inflated prices resulted in Health Options paying significantly

higher reimbursements than what Health Options would have paid had Navitus charged Health Options based on the U&C prices that the parties had agreed to in their Pharmacy Benefit Management Services Agreement (the "PBM Agreement").

As one of Navitus' contracted network pharmacies, Albertsons was required to submit pricing information—including a U&C price—to Navitus for prescription drug purchases made by Health Options members. Navitus, in turn, was obligated to adjudicate Albertsons prescription drug claims charged to Health Options in accordance with the U&C price definition set forth in the PBM Agreement between Health Options and Navitus—regardless of how Navitus and Albertsons may have defined "U&C price" in their separate agreement with each other. For example, Albertsons admits that it has prescription discount pricing that it uses for individuals who pay without insurance that it does not report to Navitus as the U&C price. Alves Declaration, Exhibit B, at 2 (Nov. 5, 2019 Albertsons Letter). But, under Health Options' PBM Agreement with Navitus, Navitus was required to include such discount pricing in the U&C price when adjudicating Health Options' claims. Therefore, complete and accurate evidence of Albertsons' price list and transaction data of individuals who purchased drugs without insurance—including purchases using the discount pricing referenced above—is directly relevant and material to validating the U&C prices Navitus used to adjudicate Health Options' claims and calculating the amount that Health Options was overcharged.

In discovery, Health Options requested from Navitus specific information from certain pharmacies in Maine and New Hampshire within Navitus' network, including Albertsons, regarding those pharmacies' (1) internal pharmacy price lists, including any discount prices, that the pharmacy charges customers who pay without insurance, and (2) pharmacy cash and uninsured transaction data reflecting the drug prices the pharmacy actually charged their customers who paid

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 3

without insurance (collectively the "Subpoenaed Information"). The Subpoenaed Information is material to Health Options' determination of the amount by which it overpaid Navitus, as a result of Navitus' use of inflated U&C prices to adjudicate Health Options' members' pharmacy claims. Navitus refused to provide the Subpoenaed Information, asserting that it does not have the Subpoenaed Information in its possession.

Health Options proceeded to request issuance of such subpoenas on August 7, 2018. The arbitration panel agreed that documents and testimony from Albertsons was relevant and material, and, pursuant to its authority under the FAA, issued a subpoena on August 13, 2018. The subpoena directed Albertsons to provide testimony and the Subpoenaed Information, at an arbitration hearing in Madison, Wisconsin. Pursuant to discussions with Albertsons related to the appropriate entity to subpoena given the region and the information requested, Health Options served an amended subpoena on Albertsons on August 30, 2018.

Health Options attempted to accommodate some of Albertsons' objections to the subpoena by extending the time to respond, offering a protective order, and providing a template of data fields for Albertsons to assist in determining the requested transaction data portion of the subpoena. But in a letter dated September 7, 2018, Albertsons informed Health Options that it would not produce the Subpoenaed Information or have a witness appear at a hearing. Alves Declaration, Exhibit C. Despite numerous communications and attempts to address Albertsons' objections, the parties were unable to reach an agreement that would result in Albertsons providing the material information sought in the subpoena. Alves Declaration, Exhibit D (Nov. 14, 2019 letter from J. Alves to D. Day), at Exhibits 1-3 thereto (email correspondence between D. Day and J. Alves). On October 8, 2018, Albertsons confirmed that it would not comply with the subpoena. Alves Declaration, Exhibit D, at Exhibit 2 thereto (Oct. 8, 2019 email from D. Day to J. Alves).

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 4**

In March 2019, Albertsons refused to provide the information requested by Navitus under Navitus' contract rights. Alves Declaration, <u>Exhibit B</u>, at 1 (Nov. 5, 2019 Albertsons Letter). Thereafter, there were a number of other briefings, key depositions, and offers to mediate that may have impacted the disposition of the arbitration and, thus, Health Options' need for the Subpoenaed Information. As a result, so as to minimize the burden on third parties, Health Options waited to reissue the subpoena until absolutely necessary. Since Albertsons had previously objected to the Madison, Wisconsin hearing location (Alves Declaration, <u>Exhibit D</u>, at Exhibit 3 thereto (Jan. 31, 2019 email from D. Day to J. Alves)), Health Options requested that the subpoena hearing location be held in Boise, Idaho.

The reissued Subpoena was properly served on October 18, 2019 and directs Albertsons to provide testimony and documents before all, or a majority of, the arbitrators at a hearing in Boise, Idaho. Alves Declaration, <u>Exhibit A</u>. Health Options explained to Albertsons that at least two of the three arbitrators constituting the arbitration panel would be physically present at the hearing, as well counsel for Health Options, and the witness for Albertsons. Alves Declaration, <u>Exhibit C</u>, at 3 (Nov. 14, 2019 Health Options Letter). The witness for Albertsons would provide the Subpoenaed Information at the time of the hearing (to the extent that Albertsons is unwilling to provide the Subpoenaed Information in advance to facilitate the efficiency of the hearing) and testimony relating to the Subpoenaed Information. *Id.* The arbitrators will hear testimony and rule on evidentiary issues as they arise, and the proceedings will be recorded by a scheduled court reporter and become part of the arbitration record. *Id.*

Albertsons has refused to appear for the hearing and confirmed that it would not produce any information absent a court order. Alves Declaration, <u>Exhibit B</u>, at 4 (Nov. 5, 2019 Albertsons Letter); <u>Exhibit E</u>, at 2 (Nov. 15, 2019 Albertsons Letter).

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 5**

# ARGUMENT

**I.    THIS COURT HAS JURISDICTION TO ENFORCE THE ARBITRATION SUBPOENA.**

Section 7 of the FAA authorizes arbitrators to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case."  9 U.S.C. § 7. Section 7 further provides:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

*Id.*  This Court is thus authorized pursuant to Section 7 to enforce the Subpoena issued by The Hon. Myra Selby and The Hon. Jeffrey Keyes because the Subpoena summoned Albertsons to appear before at least a majority of the arbitrators physically sitting for a hearing in Boise, Idaho, which is located within the district for the United States District Court, for the District of Idaho. *See, e.g.*, *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 (3d. 2004) (Section 7 permits subpoenas in which "the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time"); *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, (2d Cir. 2005) (enforcing arbitration subpoena summoning third-party to appear at hearing where majority of arbitrators were physically sitting); *Seaton Ins. Co. v. Cavell USA*, 2007 WL 9657277, at *1 (Mar. 21, 2007 D. Conn.) (enforcing third-party arbitration subpoena where the arbitration panel chose to sit at a hearing location for the sole purpose of holding third-party subpoena hearing).

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 6**

Though Section 7 of the FAA authorizes this Court to enforce the Subpoena, it does not independently confer subject matter jurisdiction over such motion to enforce. *See Amgen, Inc. v. Kidney Ctr.*, 95 F.3d 562, 567 (7th Cir. Sept. 6, 1996). Rather, the party seeking enforcement "must establish that the dispute that underlies the arbitration would come within the jurisdiction of the district court." *Id.*; *see Me. Cmty. Health Options v. Walgreen Co.*, No. 18-MC-0009, 2018 WL 6696042 (W.D. Wis. Dec. 20, 2018) (enforcing third-party arbitration subpoena after determining diversity jurisdiction existed based on citizenship of the parties to the underlying dispute).

Here, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the diversity of the parties to the underlying dispute:

(1) Health Options is a citizen of Maine because it is incorporated, and has its corporate headquarters, in Maine. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (holding that that "principal place of business" is the corporation's "nerve center," which is generally found at its corporate headquarters).

(2) Navitus Health Solutions, LLC, and all of its members, are citizens of Wisconsin.[1] *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that "an LLC is a citizen of every state of which its owners/members are citizens").

   a) Navitus Health Solutions, LLC, is a domestic limited liability company organized under the laws of the State of Wisconsin, with its principal office in Madison, Wisconsin;

---

[1] See *Me. Cmty. Health Options v. Walgreen Co.*, No. 18-MC-0009, 2018 WL 6696042, at *1 (W.D. Wis. Dec. 20, 2018) (determining that Maine Community Health Options established it had complete diversity with Navitus Health Solutions, LLC).

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 7**

   b) Navitus Health Solutions, LLC's sole member is Navitus Holdings, LLC;

   c) Navitus Holdings, LLC is a domestic limited liability company organized under the laws of the State of Wisconsin, with its principal office in Wisconsin;

   o  Navitus Holdings, LLC is a wholly-owned subsidiary of Dean Health Systems, Inc; and

   o  Dean Health Systems, Inc. is incorporated in Wisconsin and has its principal office in Wisconsin. *See* Report Establishing Subject Matter Jurisdiction in Response to the Court's November 26, 2018 Order, *Me. Cmty. Health Options v. Walgreen Co.*, No. 18-MC-0009 (W.D. Wis. Nov. 30, 2018), ECF No. 18.

The forgoing demonstrates that there is complete diversity between the parties to the arbitration underlying this action. Additionally, the matter in controversy exceeds $75,000, as the underlying arbitration Demand seeks in excess of 17 million dollars in damages. The underlying dispute would come within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332 and therefore, this Court has subject matter jurisdiction over this arbitration subpoena enforcement action.[2]

## II. THE SUBPOENA IS VALID AND ENFORCEABLE PURSUANT TO THE FEDERAL ARBITRATION ACT.

Section 7 of the FAA authorizes arbitrators to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7.

---

[2] In a related case, a district court has already determined that it has subject matter jurisdiction over a subpoena enforcement dispute arising from the same underlying arbitration. *Me. Cmty. Health Options v. Walgreen Co.*, No. 18-MC-0009, 2018 WL 6696042, at *1 (W.D. Wis. Dec. 20, 2018) (finding Health Options and Navitus Health Solutions LLC had complete diversity).

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 8**

The subpoena must be "served in the same manner as subpoenas to appear and testify before the court." *Id*.  The Subpoena served on Albertsons satisfies the requirements set forth in the FAA.

> A.      **The Subpoena Summons Albertsons to Appear for a Hearing.**

The Subpoena requests that Albertsons produce a witness to testify at a hearing before the majority of arbitrators, who must bring with him or her certain documents.  Specifically, the Subpoena commands that Albertsons designate a witness to "appear . . .at a hearing before all or a majority of the arbitrators" in Boise, Idaho, "to testify and give evidence about the following matters, and that your representative bring to the hearing and produce the following documents now in your custody . . ." Alves Declaration, Exhibit A.  Nevertheless, in its November 5, 2019 response letter, Albertsons—despite admitting that Section 7 of the FAA grants an arbitrator power to order third parties to produce documents in the context of a hearing—objected on the ground that the hearing was somehow "not truly a hearing" because it is being called specifically for Albertsons to testify and provide documents.  Alves Declaration, Exhibit B, at 2; *see also* Exhibit E, at 1 (Nov. 15, 2019 Albertsons Letter).

Albertsons' argument is meritless.  The case law is clear that Section 7 of the FAA allows arbitrators to issue valid subpoenas—such as the Subpoena served on Albertsons—that summon a third-party to provide testimony and documents at a hearing held for that purpose prior to the arbitration's final merits hearing. *See, e.g.*, *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008) ("[S]ection 7 authority is not limited to witnesses at merits hearings, but extends to hearings covering a variety of preliminary matters."); *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 578 (2d Cir. 2005) ("[T]he mere fact that the session before the arbitration panel . . .was preliminary to later hearings that the panel intended to hold does not transform the [preliminary] hearing into a discovery device."); *Hay Group*, 360 F.3d at 413

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 9**

(Chertoff, J., concurring) (observing that the FAA grants arbitrators the power to compel a third-party witness to appear with documents before an arbitrator "who can then adjourn the proceedings"); *see also Wash. Nat'l Ins. Co. v. Obex Grp. LLC*, No.18 CV 9693 (VB), 2019 WL 266681 (S.D.N.Y. Jan. 18, 2019) (enforcing third-party arbitration subpoena to provide testimony and documents at hearing specifically for that purpose); *Me. Cmty. Health Options v. Walgreen Co.*, No. 18-MC-0009, 2018 WL 669042 (W.D. Wis. Dec. 20, 2018) (same); *Seaton Ins. Co.v. Cavell USA*, No. 3:07-CV-356 (AHN), 2007 WL 9657277, at *2 (D. Conn. Mar. 21, 2007) (same). Indeed, "[n]othing in the language of the FAA limits the point in time in the arbitration process when [the subpoena] power can be invoked or says that the arbitrators may only invoke this power under section 7 at the time of the trial-like final hearing." *Stolt-Nielsen*, 430 F.3d at 578.

### B.     The Subpoena Does Not Request Pre-Hearing Document Discovery.

In its November 5, 2019 letter, Albertsons described the arbitration subpoena as seeking third-party "pre-hearing document discovery." Alves Declaration, Exhibit B, at 1. This characterization is not grounded in the law or the facts. The cases Albertsons relies on in its response letter for this argument merely hold that subpoenas seeking "pre-hearing discovery"—*i.e.*, subpoenas seeking production of documents outside of a hearing before the arbitrator—are not allowed under section 7 of the FAA. Alves Declaration, Exhibit B, at 2 (citing *CVS Health Corporation v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017); *Managed Care Advisory Group, LLC v. Cigna Healthcare, Inc.*, 939 F.3d 1145, 1161 (11th Cir. 2019); *Life Receivables v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216-17 (2nd Cir. 2008); *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 (3rd Cir. 2004)). Those cases are entirely consistent with the Subpoena that Health Options served on Albertsons, which summons Albertsons to appear at a

hearing in the physical presence of the arbitrators to provide testimony and documents *at that time*.[3]

In *Stolt-Nielson SA v. Celanese*, the Second Circuit upheld enforcement of a third-party subpoena seeking testimony and documents at a hearing prior to the final arbitration merits hearing and rejected the third-party's contention that claimants and the arbitration panel had conspired to "circumvent Section 7's limitations through the contrivance of conducting its discovery in the presence of the arbitrators." 430 F.3d 567, 577 (2d Cir. 2005). In finding that the arbitration subpoena was valid under Section 7 of the FAA, the court credited the fact that all the arbitrators were present at the hearing, the arbitrators heard testimony and ruled on evidentiary issues such as admissibility and privilege and reserved on other evidentiary issues, and the testimony provided at the hearing became part of the arbitration record to be used by the arbitrators in their determination of the dispute before them, while also noting that these factors need not all be present. *Id.* at 578. Similarly, the Subpoena here directs Albertsons to provide testimony and documents before a majority of the arbitration panel, who will be physically present when the hearing takes place and ready to rule on, or reserve for a later time, evidentiary issues that may arise, and a scheduled court reporter will record the testimony given as part of the arbitration record.

Albertsons contends that the Subpoena is invalidated by the possibility that Navitus' counsel might not be physically present at the hearing and that the hearing may take "hours." Alves

---

[3] Notably, though, some courts have interpreted section 7 to confer authority on arbitrators to request documents prior to any hearing. *See In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870-71 (8th Cir. 2000) ("[I]mplicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing.");*COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275-76 (4th Cir. 1999) (allowing pre-hearing discovery upon showing of necessity); *Am. Fed'n of Tel. & Radio Artists, AFL-CIO v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999) (looking to the FAA for guidance in support of authorizing third-party subpoena for pre-hearing documents in labor arbitration); *Amgen Inc. v. Kidney Center of Delaware County, Ltd.*, 879 F.Supp. 878 (N.D.Ill.1995) (enforcing third-party subpoena seeking pre-hearing discovery), *dismissed on appeal on other grounds*, 101 F.3d 110 (7th Cir. 1996), *Meadows Indem. Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42, 45 (M.D. Tenn. 1994) (same).

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 11**

Declaration, Exhibit B, at 2 (Nov. 5, 2019 Albertsons Letter). Regardless of whether the arbitration panel ultimately decides to allow Navitus' counsel to participate remotely, counsel for Health Options, Albertsons' witness, and a majority of the arbitrators will be physically present at the hearing. This is consistent with cases finding a physical presence requirement exists for third-party subpoena hearings, which focus on the presence of the witness, the arbitrators, and the party that served the subpoena. *See Hay Group*, 360 F.3d at 407 (limiting an arbitrator's subpoena power to "situations in which the non-party has been called to appear in the physical presence of the *arbitrator* . . .") (emphasis added); *id.* at 411 ("[T]he *party seeking the documents* . . . will be forced to appear at a proceeding during which the documents are produced") (emphasis added). This presence requirement "forces the party seeking the non-party discovery—and the arbitrators authorizing it—to consider whether production is truly necessary." *Life Receivables*, 549 F.3d at 218 (2d Cir. 2008).

      Similarly, the fact that the hearing may take several hours does not invalidate the Subpoena. The requirement that any documents sought via a third-party subpoena must be produced at a hearing exists so that "parties that consider obtaining such a subpoena will be forced to consider whether the documents are important enough to justify the time, money, and effort that the subpoenaing parties will be required to expend if an actual appearance before an arbitrator is needed." *Hay Group*, 360 F.3d at 409. Health Options has determined that the testimony and documents sought in its Subpoena are sufficiently important to justify the effort of seeking them from Albertsons. A majority of the arbitration panel agreed that the evidence is important enough to justify physically appearing for a preliminary evidentiary hearing to receive the testimony and documents from Albertsons' witness. To the extent that Albertsons wishes to reduce the length of the arbitration hearing, it is of course—like any subpoenaed third-party—free to agree to produce

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 12**

the documents in advance of the hearing in order to streamline the hearing. *See, e.g.*, *Hay Group*, 360 F.3d at 413 (Chertoff, J.) (noting that "in many instances" the inconvenience of a third-party making a personal appearance may prompt the witness to deliver the documents prior to holding a hearing).

### III.  OBJECTIONS AS TO RELEVANCE, VAGUENESS, AND BURDEN ARE FOR THE ARBITRATORS TO CONSIDER AND ARE NOT PROPER BASES ON WHICH TO DENY ENFORCEMENT OF THIS SUBPOENA.

Albertsons also objected to the Subpoena on the basis of relevance, breadth, vagueness, and burden imposed by compliance. Such objections are without merit and, in any event, should be made directly to the arbitration panel instead of this Court.

Objections to relevance should not be considered when determining the enforceability of this Subpoena. Rather, such objections are questions reserved for the arbitration panel's determination. *See*, *e.g.*, *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870, 71 (8th Cir. 2000) (refusing to determine whether requested information was relevant because that is "antithetical to the well-recognized policy favoring arbitration, and compromises the panel's presumed expertise in the matter at hand"); *Am. Fed. of Television & Radio Artists* v. *WJBK-TV*, 164 F.3d 1004, 1010 (6th Cir. 1998) (relevance of information sought by arbitration subpoena should be determined by arbitrator); *Me. Cmty. Health Options*, 2018 WL 6696042, at *5 ("[A] district court should not make independent assessment of materiality of the information sought before acting to compel compliance with the arbitration panel's subpoena."); *Odfjell Asa v. Celanese AG*, 348 F. Supp. 2d 283, 287 (S.D.N.Y. 2004), *aff'd sub nom. Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005) (holding that objections to subpoenas on "issues of admissibility, privilege, and the like" were issues preliminary issues for the arbitration panel rather than the court). Indeed, "it is not the

function of this court to determine what an arbitrator would or should find relevant in resolving a dispute." *Am. Fed. of Television & Radio Artists,* 164 F.3d at 1010.

Objections concerning the breadth or specificity of the information requested relate to relevance and materiality, and are thus properly issues for the arbitrator rather than the court. *See, e.g.*, *Me. Cmty. Health Options*, 2018 WL 6696042, at *5 ("Walgreens argues that the subpoenaed data is overly broad because it seeks information about customers unrelated to the case, but this goes to materiality, which is a matter for the arbitration panel."); *Fed. Ins. Co. v. Law Offices of Edward T. Joyce, P.C.*, No. 08C0431, 2008 WL 4348604, at *1 (N.D. Ill. Mar. 13, 2008) (contentions concerning relevance, breadth, and timing of information sought should be raised with the arbitrator). Likewise, whether a recipient of a third-party subpoena faces undue burden should properly be within the discretion of the arbitrator. That determination involves weighing factors that fall within the arbitrators' expertise in the underlying arbitration, such as "the relevance of the discovery sought, the subpoenaing party's need for the documents, [and] the breadth of the request." *Parker v. Four Seasons Hotels*, 291 F.R.D. 181, 188 (N.D. Ill. 2013); *see ATS Prod., Inc., v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015).

This Court need not decide whether the Subpoena is unduly burdensome or seeks relevant information to conclude that it is valid and enforceable. Moreover, even were the Court to consider Albertsons' objections relating to relevance, vagueness, and burden, it should not find any of these to be bases for Albertsons not complying with the Subpoena.

First, the requested Subpoenaed Information is highly relevant and material. Health Options entered into a PBM agreement with Navitus pursuant to which Navitus agreed to adjudicate Health Options' claims in accordance with a particular formula. That formula includes the U&C price which is separately defined in the Health Options Agreement. The definition of

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 14**

U&C in the PBM Agreement between Health Options and Navitus is different than the definition of U&C in the network pharmacy agreement between Albertsons and Navitus, as excerpted in Albertsons' November 5, 2019 letter. Alves Declaration, Exhibit B, at 2. Yet, regardless of whether Albertsons had an obligation to provide its "discount pricing" to Navitus, Navitus had an obligation to Health Options to adjudicate its claims in accordance with the terms of the PBM Agreement between Health Options and Navitus.

Second, the Subpoena request is not overly broad or vague. Health Options has taken reasonable steps to avoid imposing undue burden or expense on Albertsons. The Subpoena is narrowly tailored to meet the needs of the underlying arbitration by seeking narrow categories of information and is limited in time to the two-and-half year time period that Health Options members were served by Navitus' network of pharmacies, which includes Albertsons. And rather than being vague, the Subpoena is highly specific, identifying particular data fields in its requests and Health Options. Moreover, even if the requested documents are not to be produced until the hearing, Albertsons can—as it has in the past—confer with Health Options concerning any questions about the information requested. Alves Declaration, Exhibit D, at Exhibit 1 thereto (Aug. 20, 2018 email from J. Alves to D. Day) (agreeing with Albertsons counsel's proposal to provide a sample data set of information responsive to the subpoena).

## CONCLUSION

For the foregoing reasons, Health Options respectfully requests that the Motion to Enforce Third-Party Subpoena be granted, and that Albertsons be compelled to provide testimony and documents at a hearing in Boise, Idaho in the underlying arbitration.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 15**

DATED: November 19, 2019

                                            GIVENS PURSLEY LLP

                                            By  */s/ Alexander P. McLaughlin*
                                            Alexander P. McLaughlin – Of the Firm
                                            Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on this 19th day of November, 2019, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA** to be served by the method indicated below, and addressed to the following:

| | |
|---|---|
| Daniel S. Day | [ ] U.S. Mail |
| Vice President, Litigation and Regulatory | [X] Facsimile (208) 395-4656 |
| Compliance | [ ] Hand Delivery |
| Albertsons Companies, Inc. | [ ] Overnight Delivery |
| Boise Home Office | [X] Email dan.day@albertsons.com |
| 250 Parkcenter Blvd. | |
| Boise, Idaho 83706 | |

              */s/ Alexander P. McLaughlin*
              Alexander P. McLaughlin