Alexander P. McLaughlin, ISB No. 7977
Melodie A. McQuade, ISB No. 9433
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho  83701-2720
Office: (208) 388-1200
Fax: (208) 388-1300
apm@givenspursley.com
mam@givenspursley.com
14907545_1 [14961.1]

Jacinta L. Alves (*pro hac vice* pending)
Laurel Pyke Malson (*pro hac vice* pending)
Stephen J. McBrady (*pro hac vice* pending)
Brian C. Lewis (*pro hac vice* pending)
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:     (202) 624-2500
Facsimile:     (202) 628-5611
Email:         jalves@crowell.com
               lmalson@crowell.com
               smcbrady@crowell.com
               blewis@crowell.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAINE COMMUNITY HEALTH OPTIONS,<br><br>                    Plaintiff,<br><br>    v.<br><br>ALBERTSONS COMPANIES, INC.,<br><br>                    Defendant. | Case No. _____<br><br>**DECLARATION OF JACINTA L. ALVES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA** |

**DECLARATION OF JACINTA L. ALVES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 1**

**JACINTA L. ALVES**, under penalty of perjury, hereby declare and state as follows:

1.      I am a partner at the law firm of Crowell & Moring LLP in Washington, D.C. with a pending application to practice before this Court *pro hac vice*.

2.      I am counsel for Maine Community Health Options ("Health Options").

3.      I am over the age of eighteen (18) years and make this Declaration based on my own personal knowledge.

4.      Attached hereto as **Exhibit A** is a true and correct copy of Subpoena Duces Tecum directed to Albertsons Companies, Inc., and dated October 15, 2019.

5.      Attached hereto as **Exhibit B** is a true and correct copy of a November 5, 2019 dated letter that I received from Daniel Day of Albertsons Companies.

6.      Attached hereto as **Exhibit C** is a true and correct copy of a September 7, 2018 dated letter that I received from Daniel Day of Albertsons Companies.

7.      Attached hereto as **Exhibit D** is a true and correct copy of a November 14, 2019 dated letter that I sent to Daniel Day of Albertsons Companies.

8.      Attached hereto as **Exhibit 1** to **Exhibit D** is a true and correct copy of an August 20, 2018 email that I sent to Daniel Day of Albertsons Companies.

9.      Attached hereto as **Exhibit 2** to **Exhibit D** is a true and correct copy of an October 8, 2018 email that I received from Daniel Day of Albertsons Companies.

10.     Attached hereto as **Exhibit 3** to **Exhibit D** is a true and correct copy of a January 31, 2019 email that I received from Daniel Day of Albertsons Companies.

11.     Attached hereto as **Exhibit 4** to **Exhibit D** is a true and correct copy of the current Protective Order in the *Maine Community Health Options v. Navitus Health Solutions, LLC* arbitration proceeding before the American Arbitration Association.

**DECLARATION OF JACINTA L. ALVES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA - 2**

12.     Attached hereto as **Exhibit E** is a true and correct copy of a November 15, 2019 dated letter that I received from Daniel Day of Albertsons Companies.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED this 19th of November, 2019.


                                        /s/ *Jacinta L. Alves*
                                        Jacinta L. Alves

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of November, 2019, I caused a true and correct copy of the foregoing **DECLARATION OF JACINTA L. ALVES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE THIRD-PARTY ARBITRATION SUBPOENA** to be served by the method indicated below, and addressed to the following:

Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
Albertsons Companies, Inc.
Boise Home Office
250 Parkcenter Blvd.
Boise, Idaho 83706

[  ] U.S. Mail
[X] Facsimile (208) 395-4656
[  ] Hand Delivery
[  ] Overnight Delivery
[X] Email dan.day@albertsons.com


_/s/ Alexander P. McLaughlin_
Alexander P. McLaughlin

# EXHIBIT A

The Arbitration Tribunals of the

# AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| *In the Matter of the Arbitration between*<br><br>**Maine Community Health Options,**<br>    *Claimant,*<br><br>        v.<br><br>**Navitus Health Solutions,**<br>    *Respondent.* | **Case No. 01-18-0001-0392**<br><br><br>**SUBPOENA DUCES TECUM** |

To:    Albertsons Companies, Inc.
       250 E. Parkcenter Blvd.
       Boise, ID 83706

       c/o C T Corporation System
       921 S. Orchard St. Ste. G
       Boise, ID 83705

To Whom It May Concern:

By the authority conferred on the undersigned arbitrator by Section 7 of the Federal Arbitration Act (9 U.S.C. § 7),WE COMMAND YOU that, all business and excuses being laid aside, you designate a representative to appear on your behalf as a witness at a hearing before all or a majority of the arbitrators in the above-referenced arbitration, The Hon. Myra Selby, The Hon. Dennis Cavanaugh, and The Hon. Jeffrey Keyes, at <u>M&M Court Reporting Service; 101 S. Capitol Blvd. #503; Boise, ID 83702</u> on the <u>5th</u> day of <u>November</u> 2019, at 9:00 a.m. to testify and give evidence about the following matters, and that your representative bring to the hearing and produce the following documents now in your custody:

1.  Price lists, rate tables or other documents, whether maintained in hard copy or electronic format, sufficient to show all drug prices applicable to transactions with individuals who pay without insurance that were in effect in any Maine or New Hampshire Albertsons (including affiliates and subsidiaries) pharmacy locations from January 1, 2014 until June 30, 2016, regardless of whether such transactions occurred.

2.  Documents, including cash receipts, and electronically stored information sufficient to show the following details of all pharmacy transactions associated with individuals who paid without insurance that occurred from January 1, 2014 until June 30, 2016 in Maine or New Hampshire Albertsons (including affiliates and subsidiaries) pharmacy locations, including any reversals if applicable:

a. **Identifying information of the individual transaction** (*i.e.*, claim number or anonymized patient identifier);

b. **Date of service**;

c. **Bin number or any other routing number associated with the transaction**;

d. **Identification of the drug and amount dispensed** (*e.g.*, including NDC code, GCN/GPI or other drug hierarchical code, pharmacy prescription identifier, fill number, quantity dispensed, unit of measure/dose, days supply, drug name, brand or generic indicator, compound and specialty code, and dispensed as written code);

e. **Pharmacy identification information** (*e.g.*, including pharmacy NPI, pharmacy store number, pharmacy name, and pharmacy street, city, state, zip);

f. **All payment/paid fields** (*e.g.*, amount paid by patient, paid ingredient cost, paid dispensing fee, paid incentive, paid gross due, paid professional service fee, any other applicable "paid" fields; any basis of payment indicators such as whether the payment amount was or was not at a discount, club, member, promotional, retail, cash, or usual and customary rate; and the particular price list/table used to determine the payment amount);

g. **Query logic** (*i.e.*, the query logic used to identify and extract the electronically stored information responsive to this document request);

h. **Data dictionary** (*i.e.*, a data dictionary including definitions for the values found in the data fields to this document request).

If you shall refuse or neglect to obey this subpoena, the United States District Court for the District of Idaho, upon petition, may compel your attendance, or punish you for contempt in the same manner provided by law for securing the attendance of witnesses for their punishment for neglect or refusal to attend in the courts of the United States. Any application by you to quash or modify this subpoena in whole or in part should be addressed to the arbitral tribunal in writing with copies to counsel for the parties, except that motion upon the ground that the subpoena is unenforceable under Section 7 of the Federal Arbitration Act may also be addressed to the United States District Court for the District of Idaho.

Dated : _____10/15/19_____

Signed: _____*Nuya C. Selby*_____

Signed: _____*Jeffrey J Keyes*_____
                                    Arbitrators

*Requested By:*

Jacinta Alves
Crowell & Moring, LLP
1001 Pennsylvania Ave. NW
Washington, DC 20004
JAlves@crowell.com
(202) 624-2500
*Counsel for Claimant Maine Community
Health Options*

3

# EXHIBIT B



November 5, 2019

**Via Regular Mail & Email**
Jacinta Alves
Crowell & Moring, LLP
1001 Pennsylvania Ave. NW
Washington, DC 2004
JAlves@crowell.com

> Re:  **In the Matter of the Arbitration between Maine Health Care Options v. Navitus Health Solutions/Subpoena to Albertsons Companies, Inc. ("Albertsons") dated October 15, 2019 (the "Subpoena")**

Dear Ms. Alves:

This is a response to the Subpoena.  Albertsons asserts the following general objections:

1. The Subpoena follows a succession of prior attempts to subpoena data and information from Albertsons.  Maine Health Care Options ("MHCO") issued prior subpoenas on August 13, 2018 and September 6, 2018—more than a year ago.  At that time, Albertsons objected on the basis that, among other things, the subpoenas exceeded the authority of the Arbitration panel under Federal Arbitration Act, 9 U.S.C. § 7 ("FAA").  See Exhibits 1 (August 23, 2018 Response) and 2 (September 7, 2018 Response).  In response, the Arbitration panel then ordered Navitus Health Solutions ("Navitus") to try to obtain the data through an audit of Albertsons.  See Exhibit 3 (February 20, 2019 Navitus Letter and enclosed exhibits).  This too exceeded the Arbitration panel's authority and was beyond the scope of the Navitus contract.  Thus, Albertsons declined to provide the requested information.  See Exhibit 4 (March 1, 2019 Response).  MCHO and the Arbitration panel delayed issuing the Subpoena nearly eight months after the last attempt to obtain the documents from Albertsons.

   As noted, the arbitrators' authority to issue subpoenas to third parties is prescribed by section 7 of the FAA.  Section 7 of the Act reads in pertinent part:

   > "The arbitrators . . . or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case."

   It is generally held that section 7 of the FAA only grants an arbitrator power to order third parties to produce documents in the context of a hearing.  CVS health Corporation v. Vividus, LLC, 878 F.3d 703, 706 (9th Cir. 2017).  Arbitrators are not authorized to compel pre-hearing document discovery from entities not party to the arbitration proceedings.  Id. at 706-708.

Working together to be the *favorite local supermarket*™

       

       

The Subpoena exceeds the authority of the Arbitration panel under the FAA.  As you have described to me during our telephone conversation on Thursday, October 31, 2019, the proposed hearing is not truly a hearing.  The hearing is scheduled solely for the purpose of receiving the subpoenaed data or perhaps hearing objections regarding the Subpoena.  Upon production of the data, MCHO intends to spend hours and hours reviewing the data produced during the period of a nominal "hearing" and have their experts "on call" to consult with about the data.  In fact, many of the participants are only participating by telephone.  During the document review, the Albertsons witness and the arbitrators will stand idly by waiting and observing the extensive review.  This evidence is not being formally presented to the Arbitrators for any evidentiary rulings.  There is no agenda to consider evidentiary or other issues at the hearing.  From all appearances, this is merely an additional step in an on-going and impermissible attempt to obtain this data.

In fact, as noted above, this is the fourth time that MCHO and the arbitrators have attempted to obtain this data.  The only reason the arbitrators have determined to convene this hearing in Idaho and to be present is to lend an aura of legitimacy to the Subpoena which previously did not exist, but not for the real purpose of conducting a hearing.  The fact that the arbitrators are present is nothing more than a pretense.  This is discovery and not a hearing in any real sense.  The volume of data involved does not lend itself to a review during a hearing and it also imposes an undue burden on a third party. Requiring a corporate witness—in this case Daniel Salemi, Group Vice President, Pharmacy Services—to sit for hours while MCHO reviews the data is an oppressive and unreasonable burden.

Applicable law does not allow for an arbitration panel to issue subpoenas to third parties under such circumstances or for such purposes.  Managed Care Advisory Group, LLC v. Cigna Healthcare, Inc., 939 F.3d 1145, 1161 (11th Cir. 2019)("we interpret the plain meaning of Section 7 as (1) requiring summonsed non-parties to appear in the physical presence of the arbitrator as opposed to a video conference or teleconference; and (2) prohibiting pre-hearing discovery"); Life Receivables v. Syndicate 102 at Lloyd's of London, 549 F.3d 210, 216-17 (2nd Cir. 2008)("section 7 of the FAA does not authorize arbitrators to compel pre-hearing document discovery from entities not party to the arbitration proceeding"); Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404 (3rd Cir. 2004)(holding that the FAA did not authorize the panel to issue a pre-hearing discovery subpoena to a third party).

2.  The operative Navitus pharmacy benefit manager ("PBM") contract governing business with Shaw's Supermarket stores (the exclusive company banner operating in Maine and New Hampshire) contains the following language:

> "'Usual and Customary Price' means the retail cash price charged by a Participating Pharmacy Location to its cash-paying customers for a particular drug on the date it is dispensed, inclusive of any corporate-wide routine pricing programs, but excluding any membership program discounts."

Based on the contract definition of "Usual and Customary Price" the company does not include discount pricing in the usual and customary price charged to Navitus.  See Corcoran v. CVS, No. 15-cv-03504, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017), appeal docketed, Case No. 17-16996 (9th Cir. 2017).   Therefore, any inquiry and request to provide data regarding discount pricing

does not relate to a claim that Navitus has failed to pass on such discounts to the claimant in this case, since it is not required by the Navitus contract.

3. Upon review of the Arbitration Demand, no allegations are made regarding Albertsons. Albertsons and its affiliates have never conducted a $4 generic program nor has Albertsons ever offered a retail program comparable to programs offered by Walmart, Target, Costco, Walgreens or Rite Aid.  Consequently, there is no basis for any request for discovery from Albertsons as it does not relate to any of the allegations of the Arbitration Demand.

4. Albertsons will only produce documents and data subject to a protective order.

Albertsons asserts the following specific objections:

1.  The request is overly broad, vague and ambiguous.  As a general matter, Albertsons does not have any such documents responsive to this request relating to cash transactions.  Albertsons does not maintain price lists or rate tables of any kind.  Operationally, Albertsons does not preserve all of the data elements that are considered in determining a cash price for a particular transaction at a particular time.  That information cannot be reconstructed.  Albertsons is only capable of producing the data that evidences actual individual cash transactions.  Albertsons does not maintain price lists or rate tables of any kind for third party discount cards that are used by its customers who do have insurance.  With respect to its myRxCare discount program, however, Albertsons does not deem that information to be called for by this request, nor does it believe that it is relevant to this proceeding.   Based on the foregoing, Albertsons will not produce any documents relating to request number 1.

2. The request is overly broad, vague and ambiguous, and unduly burdensome.  Albertsons cannot produce documents regarding reversals.  Reversals are not captured or retained in its pharmacy system.
    a. This information exists, but Albertsons will not produce it based on the general and specific objections set forth above.
    b. This information exists, but Albertsons will not produce it based on the general and specific objections set forth above.
    c. No such information exists for cash transactions.
    d. This information exists, but Albertsons will not produce it based on the general and specific objections set forth above.
    e. This information exists, but Albertsons will not produce it based on the general and specific objections set forth above.
    f. Albertsons has records of the amount paid by the patient, but Albertsons will not produce it based on the general and specific objections set forth above; other fields may or may not exist for cash transactions.  References to "discount, club, member, or promotional" are not applicable for cash transactions.  As noted above, price lists or tables do not exist.

Based on the foregoing, Albertsons declines to produce any documents or a witness for the hearing scheduled for November 5, 2019.

Very truly yours,

Albertsons Companies, Inc.

Daniel S. Day
Vice President, Litigation &
Regulatory Compliance

# EXHIBIT C



September 7, 2018

Jacinta L. Alves
CROWELL & MORING, LLP
1001 Pennsylvania Ave. NW
Washington, DC 20004
202-624-2500

Re: *In the Matter of the Arbitration between* Maine Health Care Options v. Navitus Health Solutions
("Navitus")/Subpoena to Albertsons Companies, Inc. dated August 31, 2018 (the "Subpoena")

Dear Ms. Alves:

This letter is a response to the Subpoena in the above-referenced matter and your transmittal email to me dated September 6, 2018.  I previously sent a letter with objections dated August 23, 2018 in response to the prior subpoena.  Although you have issued the Subpoena to Albertsons Companies, Inc. ("Albertsons"), and you have offered to discuss a potential protective order, you have failed to revise the specific requests in the Subpoena or to otherwise address any of the other objections contained in my letter.   Following my previous letter, I was not contacted to seek clarification regarding my objections or to "meet and confer" and explore whether Albertsons' objections could be resolved. Albertsons' objections were completely disregarded.  Consequently, Albertsons objects to the Subpoena as set forth below.

Based on the following objections, Albertsons will not produce any documents or data in response to the Subpoena:

1. Albertsons objects that the Subpoena exceeds the authority of the Arbitration panel under Federal Arbitration Act, 9 U.S.C. § 7.  See CVS Health Corporation v. Vividus, LLC, 878 F.3d 703 (9th Cir. 2017) ("The plain reading of the text of section 7 reveals that an arbitrator's power to compel the production of documents is limited to production at an arbitration hearing"). Albertsons objects to the extent that the Subpoena constitutes a request for discovery from a third party prior to a hearing.  Albertsons also objects that the Subpoena requests documents and data so voluminous that it is not feasible to produce the evidence at a hearing.

2. Albertsons objects to the Subpoena on the grounds that the Subpoena received on September 6, 2018 requires production of data on September 17, a date that is unreasonable and does not allow sufficient time for production of responsive documents and data.

3. The operative Navitus pharmacy benefit manager ("PBM") contract governing business with Shaw's Supermarket stores (the exclusive company banner operating) in Maine and New Hampshire contains the following language:

> "Usual and Customary Price" means the retail cash price charged by a Participating Pharmacy Location to its cash-paying customers for a particular drug on the date it is dispensed, inclusive of any corporate-wide routine pricing programs, but excluding any membership program discounts."

Working together to be the *favorite local supermarket*™

       
       

Based on the contract definition of "Usual and Customary Price" the company does not include myRxCare discount pricing in the usual and customary price charged to Navitus.  See Corcoran v. CVS, No. 15-cv-03504, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017), appeal docketed, Case No. 17-16996 (9th Cir. 2017).   Therefore, any inquiry and request to provide data regarding myRxCare program pricing does not relate to a claim that Navitus has failed to pass on such discounts to the claimant in this case, since it is not required by the Navitus contract.

4.   Upon review of the Arbitration Demand, no allegations are made regarding Albertsons, only Walgreens and Rite Aid.  Albertsons also objects that the myRxCare program is substantially different from either the Walmart or the Rite Aid discount programs.  Albertsons and its affiliates have never conducted a $4 generic program.   Thus, a production of data and information from pharmacies in New Hampshire and Maine regarding the myRxCare program for comparison would be inapposite.   Consequently, there is no basis for any request for discovery from Albertsons as it does not relate to any of the allegations of the Arbitration Demand.

5.   Albertsons objects that the issuing party has requested 113 data fields, which is excessive, unreasonable, unduly burdensome, and requests data fields that are irrelevant, having nothing to do with the allegations in this matter.  Essentially, the request calls for Albertsons' whole transactional data base with respect to all pharmacy claims.  For the purposes of this arbitration, however, all that the requesting party needs are the financial fields relating to cash transactions.  Examples of extraneous fields that are not needed include rejects, reversals, and duplicates, which are not adjudicated claims.  The requesting party does not need fields indicating gender, or reason for service, or injury or other data fields relating to claims covered by workers compensation.  The fields should be reasonably limited to less than 30 fields.  The request is not reasonably calculated to minimize the burden and expense to a third party.

6.   Albertsons objects that the requested documents and data are confidential and proprietary, and maybe protected by HIPAA.  Albertsons will not produce any documents or data without a protective order in place to protect the confidentiality of the information provided, and an agreement that the information will only be used for the purposes of the Arbitration and for no other purpose.

7.   Albertsons understands that there is a motion to dismiss pending in the arbitration proceeding.  Albertsons objects to producing any documents or data until after the motion to dismiss is resolved because the motion to dismiss may be granted which would render the response to the subpoena and production unnecessary and a waste of time and resources.

8.   Your email transmitting the Subpoena to me requests that the data be produced in a delimited text file with ~|~ used as the delimiter.  Albertsons objects to producing the data in that format.  If Albertsons produces data, it will produce the data in a Microsoft Access file, or in individual Excel files or text files.

9.   Albertsons provides the following response to the individual document requests:

   a.   Albertsons objects to request number one on the grounds that it calls for documents and information that is unrelated to the allegations in the Arbitration Demand and are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; the request is overly broad and unduly burdensome.  Albertsons also objects that the RxTra program has never been offered to customers in Maine or New Hampshire. The request imposes unreasonable burden and expense on a third party.

b.  Albertsons objects to request number two on the grounds that the request for "Records of all transactions" is overly broad, unduly burdensome and vague and ambiguous.  The request imposes unreasonable burden and expense on a third party.

c.  Albertsons objects to request number three on the grounds that the request is overly broad, unduly burdensome and vague and ambiguous and calls for data that is irrelevant to the allegations in the Arbitration Demand and not reasonably calculated to lead to the discovery of admissible evidence; Albertsons objects that none of the pharmacies operating in Maine or New Hampshire have ever used the PDX pharmacy system during the relevant time period; Albertsons objects to the term "Accounts Receivable Data" as being ambiguous and objects that any data from its Point of Sale ("POS") system does not contain relevant or usable information for the purposes of use in connection with the arbitration of the above-referenced matter.  The request imposes unreasonable burden and expense on a third party.

Subject to the foregoing objections, until you have addressed the preceding objections, we will not respond to the Subpoena.

Very truly yours,

Daniel S. Day
Vice President, Litigation and Regulatory Compliance
Albertsons Companies, Inc.

cc:  Jeffrey A. Simmons, Esq.

3

# EXHIBIT D

1001 Pennsylvania Avenue, N.W., Washington, DC  20004-2595 ▪ p202 624-2500 ▪ f202 628-5116



**Jacinta L. Alves Esq.**
**(202) 624-2573**
**JAlves@crowell.com**

November 14, 2019

**VIA EMAIL**

Daniel S. Day
Vice President, Litigation & Regulatory Compliance
Albertsons Companies, Inc.
250 Parkcenter Blvd.
Boise, ID: 83706
Dan.Day@albertsons.com

Re:     Response to Albertsons' November 5, 2019 Letter Pertaining to the Subpoena of
        Albertsons in the Maine Community Health Options v. Navitus Arbitration

Dear Mr. Day:

        This letter responds to your November 5, 2019 letter on behalf of Albertsons Companies,
Inc. ("Albertsons"). Per our discussion on November 5, 2019 following my receipt of your letter,
Albertsons has confirmed that it will not provide the information requested in the October 15,
2019 Subpoena (the "Subpoenaed Information") absent a court order finding that the Arbitration
panel has the authority to issue the Subpoena.  As we discussed, Maine Community Health
Options ("Health Options") and Albertsons will address the specific objections noted in your
November 5, 2019 letter following a ruling from the District of Idaho regarding the Arbitration
panel's authority to issue the Subpoena.  Therefore, this letter summarizes the background
leading to issuance of the Subpoena and responds solely to Albertsons' general objections.

I.      **Health Options Has Attempted to Work Cooperatively with Albertsons to Minimize**
        **Burden in Responding to the Subpoena**

        Health Options has communicated with Albertsons in good faith in an attempt to respond
and address Albertsons' objections, minimize its burden in responding to the subpoena, and
explain the basis for the subpoenaed information. *See* Exhibits 1-3.  As you note in your letter,
Health Options initially subpoenaed Albertsons on August 13, 2018 and then on September 6,
2018, as a result of my discussions with you related to the appropriate entity that ought to be
subpoenaed given the region and the information requested.  Despite numerous communications
and attempts to address Albertsons objections, we could not reach an agreement that would result
in Albertsons providing the material information sought in the subpoena, because the sum of all
of Albertsons objections yields the production of none of the Subpoenaed Information.

November 14, 2019
Page 2

Contemporaneously, but separate from the initially issued subpoenas, Health Options sought from Navitus during discovery the same information requested in the subpoenas. Navitus stated that the information was not within its possession. As a result, this led to Health Options moving to compel production of this information as the information is within Navitus' custody and control even if not within its possession. The Chair on behalf of the Arbitration panel, comprised of three former Judges, ruled in favor of Health Options finding that the information requested was within Navitus' custody and control. It is fundamental that an Arbitrator has the authority to rule on matters of discovery including whether information sought is within the possession, custody, or control of a party to the dispute, so it is unclear from your correspondence the basis upon which you believe such a ruling exceeded the Arbitration panel's authority.

Following Albertsons' refusal in March, 2019 to provide the information requested by Navitus, there was a number of other briefings, key depositions, and offers to mediate that may have impacted the disposition of the arbitration and, in turn, Health Options' need for the Subpoenaed Information. As a result, so as to minimize the burden on third parties, Health Options waited to reissue the Subpoena until absolutely necessary. Given Albertsons' earlier objection to the hearing location of Madison, Wisconsin (*see* Exhibit 3), Health Options requested that the Subpoena have a hearing location in Boise, Idaho.

## II.   The Arbitration Panel Has the Authority to Issue the Subpoena

As you correctly note, the Arbitration panel has the authority to issue subpoenas to third parties pursuant to section 7 of the FAA. While Health Options disagrees that it is generally held that section 7 of the FAA only grants an arbitrator power to order third parties to produce documents in the context of a hearing, *see, e.g.*, *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870-71 (8th Cir. 2000) ("[I]mplicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing.*");COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275-76 (4th Cir. 1999) (allowing pre-hearing discovery upon showing of necessity); *Am. Fed'n of Tel. & Radio Artists, AFL-CIO v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999) (looking to the FAA for guidance in support of authorizing third-party subpoena for pre-hearing documents in labor arbitration); *Amgen Inc. v. Kidney Center of Delaware County, Ltd.*, 879 F.Supp. 878 (N.D.Ill.1995) (enforcing third-party subpoena seeking pre-hearing discovery), *dismissed on appeal on other grounds*, 101 F.3d 110 (7th Cir. 1996), *Meadows Indem. Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42, 45 (M.D. Tenn. 1994) (same), it is of no matter here since the Arbitration panel issued the Subpoena summoning Albertsons to attend a hearing before a majority of them to provide the Subpoenaed Information and testimony. It is well-settled that section 7 of the FAA provides an arbitrator authority to issue such subpoenas. *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d. Cir. 2008); *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407, 413 (3d Cir. 2004); *Washington Nat'l Ins. Co. v. Obex Grp. LLC*, No. 18 CV 9693 (VB), 2019 WL 266681 (S.D.N.Y. Jan. 18, 2019); *Maine Cmty. Health Options v.*

November 14, 2019
Page 3

*Walgreen Co.*, No. 18-MC-0009, 2018 WL 669042 (W.D. Wis. Dec. 20, 2018); *Seaton Ins. Co. v. Cavell USA*, No. 3:07-CV-356 (AHN), 2007 WL 9657277, at *2 (D. Conn. Mar. 21, 2007).

Of greatest concern in your November 5, 2019 Letter is your patent mischaracterization of our telephone conversation on October 31, 2019. As explained to you then, Albertsons would produce the Subpoenaed Information at the hearing (to the extent it is unwilling to provide the Subpoenaed Information in advance to facilitate the efficiency of the hearing) along with a witness who would provide testimony as to – among other things – how the Subpoenaed Information was collected, how it is kept in the normal course of business, the queries used to pull the information, the meaning of the various data categories produced and how the data relate to each other. In other words, the Arbitrators would hear testimony and rule on evidentiary issues. I also explained that there was a scheduled court reporter and that the testimony would be transcribed and become part of the arbitration record.

At no point during our call did I represent that "many of the participants are only participating by telephone." As previously communicated, at least two of the Arbitrators will be physically present at the hearing as well as counsel for Health Options, and the witness for Albertsons. Counsel for Navitus requested during a call with the Chair that he be permitted to dial-in to the hearing, and Health Options stated that it did not object to his request. Similarly, at no point during our call did I say that Health Options "intends to spend hours and hours reviewing the data produced" during the hearing. To the contrary, you postured that review of the Subpoenaed Information during the hearing could take hours even though you also represented that you were uncertain as to (1) the amount of data that would result in complying with the Subpoena and (2) how many days it would take to collect the Subpoenaed Information.

Health Options remains hopeful that in future correspondence, Albertsons will choose to accurately portray our conversations rather than resort to mischaracterizations in a reaching attempt to justify its noncompliance with the Subpoena.

**III.   Health Options' PBM Agreement with Navitus, Not Albertsons' Agreement with Navitus, Is the Basis for the Subpoenaed Information**

Health Options entered into a PBM agreement with Navitus pursuant to which Navitus agreed to adjudicate Health Options' claims in accordance with a particular formula. That formula includes the Usual and Customary Price ("U&C"), which is separately defined in the Health Options Agreement. The definition of U&C in the Health Options/Navitus PBM agreement is different than the definition of U&C in the Albertsons/Navitus agreement, as excerpted in your November 5, 2019 letter. Regardless of whether Albertsons had an obligation to provide its "discount pricing" to Navitus, Navitus had an obligation to Health Options to adjudicate its claims in accordance with the terms of the Health Options/Navitus PBM agreement, among other things.

November 14, 2019
Page 4

**IV.   The Allegations in the Arbitration Demand Pertain to Navitus And Relate to All
Navitus Network Pharmacies, including Albertsons, for which Navitus Adjudicated
a Health Options Claim**

First and foremost, the Arbitration Demand sets forth allegations and causes of action
against Navitus, not pharmacies.  Secondly, the Arbitration Demand alleges that Navitus used
inflated U&C pricing when adjudicating Health Options' claims from Navitus' network
pharmacies, which includes Albertsons, in violation of the terms of the Health Options/Navitus
PBM Agreement.  Third, you admit in your November 5, 2019 letter that Albertsons has discount
pricing that it uses for individuals who pay without insurance and for which Albertsons does not
report to Navitus as the U&C price.  Health Options' PBM agreement with Navitus required
Navitus to use such discount pricing as the U&C price when adjudicating Health Options'
claims.  As such, Albertsons' price lists and transaction data of individuals who purchased drugs
without insurance, including when purchased using the discount pricing referred to in your letter,
directly relates to the allegations in the Arbitration Demand.

**V.   Albertsons Can Produce the Subpoenaed Information Subject to the Protective
Order**

There is a Protective Order in effect for the Arbitration. *See* Exhibit 4.  Note that the
protective order is HIPAA compliant (to the extent there is any protected health information that
is part of the subpoenaed information), the Subpoenaed Information can be designated at various
levels of confidentiality (including outside counsel only), and all material so designated may
only be used for purposes of the Health Options v. Navitus arbitration.

*** 

As always, please do not hesitate to reach out if Albertsons would like to further discuss
any of the above.

Very Truly Yours,

Jacinta L. Alves

Exhibits

# EXHIBIT 1

## Alves, Jacinta

| | |
|---|---|
| **From:** | Alves, Jacinta |
| **Sent:** | Monday, August 20, 2018 9:54 PM |
| **To:** | 'dan.day@albertsons.com' |
| **Cc:** | Malson, Laurel; McBrady, Stephen; Kingsolver, Justin |
| **Subject:** | Maine Community Health Options Arbitration: Follow-Up From Our Call on Friday |

Dan,

Thanks for taking the time to discuss the arbitration subpoena on Friday and for working with us to try to tailor Albertsons' response to the information Health Options is seeking.  To that end, we agree that it would be best to arrange a call with you and the appropriate members of your team on the early side of this week to discuss the data transfer protocol and to answer any other data-related questions.  Please let us know you and your team's availability this week.

In the meantime, we also agree with your proposal to provide to us a sample data set that would contain the type of information that Albertsons would propose producing along with all the data headers that are in your pharmacy system and your POS system. Please also include a data dictionary for all the fields in both the pharmacy system and the POS system databases.  Could you provide us with that sometime before a call this week?

Lastly, we did not address on our call Spec. 1 of the subpoena re the retail pharmacy discount programs offered by the Albertsons brands in Maine or New Hampshire during the subpoena timeframe. We are requesting both internal- and external-facing documents that include the discount prices during the subpoena timeframe along with any terms associated with the discounts.  As this is separate from the data transfer referenced above, please let us know if this is something you would be able to provide by early to middle next week.

Please let us know if you have any questions and we look forward to our continued discussion.

~~~~~~~~~~~~~~~~~~~~~
**Jacinta L. Alves**
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-624-2573
Fax: 202-628-5116
Jalves@crowell.com

# EXHIBIT 2

**Alves, Jacinta**

| | |
|---|---|
| **From:** | Dan Day <Dan.Day@Albertsons.com> |
| **Sent:** | Monday, October 8, 2018 4:49 PM |
| **To:** | Alves, Jacinta |
| **Subject:** | RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena Re Albertsons |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Albertsons continues to assert the remaining objections set forth in my prior letter dated September 7, 2018 which have not been addressed to our satisfaction and are unresolved.  I do not believe another call is necessary given our different viewpoints on the primary issues (1, 3, 4), and your failure to address many of the other issues (8, 9a, 9b, 9c).  Additionally, regarding objection number 6, although you have offered a protective order and to satisfy our HIPAA concerns, you have never tendered to us a proposed protective order for consideration.  Regarding 2, 5, 8, I understand that you agreed to "work with us" but we have reached no agreement.  With the issuance of the Order denying the motion to dismiss, only number 7 has been completely resolved.


Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
**ALBERTSONS COMPANIES**|  Boise Home Office
250 Parkcenter Blvd., Boise, Idaho 83706
Office: 208.395.5194  |  Cell: 208.284.6407  |  Fax: 208.395.4656
daniel.day@albertsons.com

**From:** Alves, Jacinta <JAlves@crowell.com>
**Sent:** Monday, October 08, 2018 2:08 PM
**To:** Dan Day <Dan.Day@Albertsons.com>
**Subject:** EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena Re Albertsons

I thought we had made progress on the other Albertsons' objections when we had spoken on September 18, 2018.  I understand from your email below, however, that Albertsons will not provide the subpoenaed information absent enforcement in Court.  Let me know if I am misunderstanding, and you think it is worth another call to discuss whether the parties can come to agreement on any of the subpoenaed information.

~~~~~~~~~~~~~~~~~~~
**Jacinta L. Alves**
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-624-2573
Fax: 202-628-5116
Jalves@crowell.com

Crowell & Moring LLP
Privileged and Confidential
Attorney-Client Communication
Attorney Work Product

This message contains privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

---

**From:** Dan Day [mailto:Dan.Day@Albertsons.com]
**Sent:** Monday, October 8, 2018 3:49 PM
**To:** Alves, Jacinta
**Subject:** RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena Re Albertsons

Our position on all of the other objections that we raised has not changed.

Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
**ALBERTSONS COMPANIES** |  Boise Home Office
250 Parkcenter Blvd., Boise, Idaho 83706
Office: 208.395.5194  |  Cell: 208.284.6407  |  Fax: 208.395.4656
daniel.day@albertsons.com

---

**From:** Alves, Jacinta <JAlves@crowell.com>
**Sent:** Monday, October 08, 2018 1:48 PM
**To:** Dan Day <Dan.Day@Albertsons.com>
**Subject:** RE: EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena Re Albertsons

No; just the order.

---

**From:** Dan Day [mailto:Dan.Day@Albertsons.com]
**Sent:** Monday, October 8, 2018 3:46 PM
**To:** Alves, Jacinta
**Subject:** RE: EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena Re Albertsons

No opinion accompanied the order?

Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
**ALBERTSONS COMPANIES** |  Boise Home Office
250 Parkcenter Blvd., Boise, Idaho 83706
Office: 208.395.5194  |  Cell: 208.284.6407  |  Fax: 208.395.4656
daniel.day@albertsons.com

---

**From:** Alves, Jacinta <JAlves@crowell.com>
**Sent:** Monday, October 08, 2018 1:45 PM
**To:** Dan Day <Dan.Day@Albertsons.com>
**Cc:** Malson, Laurel <LMalson@crowell.com>; McBrady, Stephen <SMcBrady@crowell.com>
**Subject:** EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena Re Albertsons

Dan,

The order is attached.

~~~~~~~~~~~~~~~~~~~
**Jacinta L. Alves**
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-624-2573
Fax: 202-628-5116
Jalves@crowell.com

Crowell & Moring LLP
Privileged and Confidential
Attorney-Client Communication
Attorney Work Product

This message contains privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

---

**From:** Dan Day [mailto:Dan.Day@Albertsons.com]
**Sent:** Monday, October 8, 2018 3:19 PM
**To:** Alves, Jacinta
**Cc:** Malson, Laurel; McBrady, Stephen
**Subject:** RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena Re Albertsons

Can you provide me a copy of the order or opinion denying the motion to dismiss?  It is hard to comment without seeing it.

Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
**ALBERTSONS COMPANIES**|  Boise Home Office
250 Parkcenter Blvd., Boise, Idaho 83706
Office: 208.395.5194  |  Cell: 208.284.6407  |  Fax: 208.395.4656
daniel.day@albertsons.com

**From:** Alves, Jacinta <JAlves@crowell.com>
**Sent:** Friday, October 05, 2018 8:07 AM
**To:** Dan Day <Dan.Day@Albertsons.com>
**Cc:** Malson, Laurel <LMalson@crowell.com>; McBrady, Stephen <SMcBrady@crowell.com>
**Subject:** EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena Re Albertsons

Dan –

Before we file to enforce, we wanted to update you on the Panel's denial of Navitus's Motion to Dismiss.  In light of this development, let us know if you would like to discuss sometime on Monday to address whether there is a path to agreement on the subpoenaed information.

Take care,

~~~~~~~~~~~~~~~~~~~~
**Jacinta L. Alves**
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-624-2573
Fax: 202-628-5116
Jalves@crowell.com


Crowell & Moring LLP
Privileged and Confidential
Attorney-Client Communication
Attorney Work Product

This message contains privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.


**From:** Dan Day [mailto:Dan.Day@Albertsons.com]
**Sent:** Monday, September 17, 2018 10:49 AM
**To:** Alves, Jacinta
**Subject:** RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena RE MyRxCare

I am available tomorrow  at 9:00 a.m. MT.

Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
**ALBERTSONS COMPANIES**|  Boise Home Office
250 Parkcenter Blvd., Boise, Idaho 83706
Office: 208.395.5194  |  Cell: 208.284.6407  |  Fax: 208.395.4656
daniel.day@albertsons.com

**From:** Alves, Jacinta <JAlves@crowell.com>
**Sent:** Sunday, September 16, 2018 3:08 PM
**To:** Dan Day <Dan.Day@Albertsons.com>
**Cc:** Malson, Laurel <LMalson@crowell.com>; McBrady, Stephen <SMcBrady@crowell.com>; Kingsolver, Justin <JKingsolver@crowell.com>
**Subject:** EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena RE MyRxCare

Dan -

Do you have availability on Monday or Tuesday to meet and confer regarding the subpoena?

In having the subpoena response time extended, the name changed, offering a protective order, and providing a specific list of requested cash transaction data, Maine Community Health Options has tried to accommodate your concerns from our initial call on August 17, 2018 as well as the objections stated in your letter of August 23, 2018. From your September 7, 2018 letter, however, Health Options understands that Albertsons is not willing to provide at the arbitration hearing, or otherwise, any of the subpoenaed information or the specifically identified categories of information in the attached. We have therefore postponed rescheduling the hearing given Albertsons refusal to attend and comply in providing the subpoena information.

Before seeking enforcement of the subpoena, we are hoping to understand whether Albertsons is willing to provide Maine Community Health Options with any of the requested fields pursuant to the subpoena.

Thanks,

~~~~~~~~~~~~~~~~~~~~

**Jacinta L. Alves**
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-624-2573
Fax: 202-628-5116
Jalves@crowell.com

---

**From:** Dan Day [mailto:Dan.Day@Albertsons.com]
**Sent:** Friday, September 7, 2018 12:54 PM
**To:** Alves, Jacinta
**Cc:** Malson, Laurel; McBrady, Stephen; Kingsolver, Justin
**Subject:** RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena RE MyRxCare

Please see the attached response.

Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
**ALBERTSONS COMPANIES** |  Boise Home Office
250 Parkcenter Blvd., Boise, Idaho 83706
Office: 208.395.5194  |  Cell: 208.284.6407  |  Fax: 208.395.4656
daniel.day@albertsons.com

---

**From:** Alves, Jacinta <JAlves@crowell.com>
**Sent:** Thursday, September 06, 2018 3:36 PM
**To:** Dan Day <Dan.Day@Albertsons.com>
**Cc:** Malson, Laurel <LMalson@crowell.com>; McBrady, Stephen <SMcBrady@crowell.com>; Kingsolver, Justin <JKingsolver@crowell.com>
**Subject:** RE: EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena RE MyRxCare

Dan,

Please find attached the revised subpoena with the changes referenced below. Based on our discussion with you on August 17, 2018, and to better understand Albertsons' position as to the scope of its objection to providing the subpoenaed information, we have attached the data fields requested by our experts and that are included within Subpoena items 2 and 3.

In terms of format, a delimited text file is preferred with ~|~ used as the delimiter, but let us know if that format would be problematic.

Additionally, we are amenable to seeking a protective order in this case to the extent that de-identifying any PHI in the production would not adequately address Albertsons concerns.  Let us know if you have a proposed protective order that you would like considered.

Given this, let us know whether Albertsons continues to object to providing the information requested in the attachment, which information specifically, and on what basis.

Thanks,

~~~~~~~~~~~~~~~~~~~~
**Jacinta L. Alves**
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-624-2573
Fax: 202-628-5116
Jalves@crowell.com

**From:** Dan Day [mailto:Dan.Day@Albertsons.com]
**Sent:** Saturday, August 25, 2018 2:34 PM
**To:** Malson, Laurel; McBrady, Stephen; Kingsolver, Justin; Alves, Jacinta
**Subject:** Re: EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena RE MyRxCare

I am willing to accept service and hope you will otherwise revise the subpoena in light of my other objections. I will look at the revised subpoena and let you know

Get Outlook for Android

**From:** Alves, Jacinta <JAlves@crowell.com>
**Sent:** Saturday, August 25, 2018 8:15:39 AM
**To:** Dan Day; Malson, Laurel; McBrady, Stephen; Kingsolver, Justin
**Subject:** EXTERNAL: RE: Maine Community Health Options vs. Navitus Health Solutions - Subpoena RE MyRxCare

Dan,

We have requested that the panel reissue the subpoena to Albertsons Companies, Inc. and move the hearing date to September 17 to provide more time – though we remain hopeful that we can agree on the production without the hearing.  We expect that the Panel will reissue the subpoena early this coming week.  Please confirm you agree to accept service on behalf of Albertsons Companies, Inc. via email.

The Panel has ordered that discovery proceed pending the motion to dismiss over objection from Navitus and after the issue was briefed.  Please confirm whether you are willing to proceed in accord with our call last week and the attached email.  If not, we will seek to enforce the subpoena in court.

If you intend to comply with the subpoena, let us know your availability for a call next week.

~~~~~~~~~~~~~~~~~~~~
**Jacinta L. Alves**

6

Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-624-2573
Fax: 202-628-5116
Jalves@crowell.com

---

**From:** Dan Day [mailto:Dan.Day@Albertsons.com]
**Sent:** Thursday, August 23, 2018 5:31 PM
**To:** Alves, Jacinta; Malson, Laurel; McBrady, Stephen; Kingsolver, Justin
**Subject:** Maine Community Health Options vs. Navitus Health Solutions - Subpoena RE MyRxCare

Please see the attached letter.

Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
**ALBERTSONS COMPANIES**|  Boise Home Office
250 Parkcenter Blvd., Boise, Idaho 83706
Office: 208.395.5194  |  Cell: 208.284.6407  |  Fax: 208.395.4656
daniel.day@albertsons.com

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended

recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

# EXHIBIT 3

## Alves, Jacinta

| | |
|---|---|
| **From:** | Dan Day <Dan.Day@Albertsons.com> |
| **Sent:** | Thursday, January 31, 2019 4:46 PM |
| **To:** | Alves, Jacinta |
| **Cc:** | Malson, Laurel; Taj, Noor |
| **Subject:** | Maine Community Health Options v. Navitus - Subpoena of Albertsons |

External Email

Jacinta, thank you for your email and for sharing with me a copy of the Walgreens opinion.  Based on the Court's analysis, however, I am of the view that the Court in Wisconsin would not find that it has the authority to enforce the subpoena against Albertsons, based on substantially different facts.  We believe that the Court lacks jurisdiction over Albertsons Companies, Inc. ("Albertsons").  Unlike Walgreens, Albertsons has not subjected itself to jurisdiction in Wisconsin.  Moreover, Rule 45 requirements are not satisfied.  The witnesses and documents are unquestionably outside the 100 mile radius.  Additionally, the objections set forth in my prior correspondence remain unresolved.


Daniel S. Day
Vice President, Litigation and Regulatory
Compliance
**ALBERTSONS COMPANIES**|  Boise Home Office
250 Parkcenter Blvd., Boise, Idaho 83706
Office: 208.395.5194  |  Cell: 208.284.6407  |  Fax: 208.395.4656
daniel.day@albertsons.com

**From:** Alves, Jacinta <JAlves@crowell.com>
**Sent:** Wednesday, January 30, 2019 9:53 AM
**To:** Dan Day <Dan.Day@Albertsons.com>
**Cc:** Malson, Laurel <LMalson@crowell.com>; Taj, Noor <NTaj@crowell.com>
**Subject:** CAUTION - EXTERNAL EMAIL: Maine Community Health Options v. Navitus - Subpoena of Albertsons

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.


Dan,

On October 8, 2018, you confirmed that you will not be complying with the amended subpoena issued to Albertsons by the arbitration Panel on August 30, 2018.  Before moving to enforce the subpoena in the Western District of Wisconsin, we first wanted to update you about a significant and related matter.

The same panel previously had issued an identical subpoena to Walgreens in the same underlying arbitration. Like Albertsons, Walgreens refused to comply. Health Options moved to enforce the subpoena in the Western District of Wisconsin.  On December 20, 2018, the court granted Health Options' motion, holding that the subpoena was valid under the Federal Arbitration Act. In light of this decision, a copy of which is attached here for your convenience, we are confident that a similar result will be reached  with respect to the subpoena served on Albertsons if Health Options is required to move the court for enforcement.

As always, Health Options remains willing to coordinate with you to minimize cost and inconvenience to Albertsons in complying with the subpoena. Please let us know by February 1, 2019 if you would like to further discuss. If we do not hear from you by that time, we will proceed to move the court for enforcement.

Regards,

~~~~~~~~~~~~~~~~~~~~
**Jacinta L. Alves**
Crowell & Moring LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-624-2573
Fax: 202-628-5116
Jalves@crowell.com

---

Warning: All e-mail sent to this address will be received by the corporate e-mail system, and is subject to archival and review by someone other than the recipient. This e-mail may contain proprietary information and is intended only for the use of the intended recipient(s). If the reader of this message is not the intended recipient(s), you are notified that you have received this message in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately.

---

# EXHIBIT 4

The Arbitration Tribunals of the

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| *In the Matter of the Arbitration between* | **Case No. 01-18-0001-0392** |
| **Maine Community Health Options,** <br> *Claimant,* | |
| v. | **PROTECTIVE ORDER** |
| **Navitus Health Solutions, LLC** <br> *Respondent.* | |

This Protective Order ("Order") shall apply to all documents, testimony, and things produced or disclosed by claimant Maine Community Health Options ("MCHO"), respondent Navitus Health Solutions, LLC ("Navitus"), and all third parties in the above-captioned action. Nothing in this Order shall be construed as relieving the parties hereto of any legal obligation that would otherwise apply. All "Confidential Information," as defined in the January 1, 2014 Pharmacy Benefit Management Services Agreement between MCHO and Navitus, shall remain subject to the limitations on use and disclosure set forth in that agreement, and the use of any Confidential Information in this proceeding by the parties and their respective agents and attorneys is subject to those limitations in addition to the limitations set forth herein.

1.     **Protected Material.**

        a.     **"Protected Material"** refers to documents, testimony, and other items that are kept confidential by the designating party, not generally known or otherwise publicly available, and that would cause harm if they were to be publicly disclosed. A producing party may in good faith designate documents, data, information, testimony, and other items as Protected Material in accordance with paragraph 2 herein.

1

b.      **"Protected Material"** includes, but is not limited to, certain individually identifiable health information, such as health information that is connected to a patient's name, address, Social Security Number or other identifying number, including HIC number, hereinafter "Protected Health Information," or "PHI." PHI shall have the same scope and definition as set forth in 45 C.F.R. §§ 160.103 and 164.501. Protected Health Information includes, but is not limited to, health information, including demographic information, relating to either (a) the past, present, or future physical or mental condition of an individual, (b) the provision of care to an individual, or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual.

**2.      Designation.**

a.      **General designations.** A producing party may in good faith designate documents and other items as Protected Material by clearly marking "CONFIDENTIAL - CONTAINS PROTECTED MATERIAL – SUBJECT TO AAA PROTECTIVE ORDER" on each page thereof, on the first page of a multi-page document, on the face of the tangible item itself, in the load file of an electronic document, or by providing a separate written notice to the other parties designating the document or tangible items as Protected Material. Any party may designate another party's materials (or a third party's materials) as Protected Material by providing written notice to counsel for the other parties designating the documents as such. Any document or portion thereof designated "CONFIDENTIAL - CONTAINS PROTECTED MATERIAL – SUBJECT TO AAA PROTECTIVE ORDER" pursuant to this paragraph shall be treated as Protected Material, as well as the information therein.

b.      **Designating deposition testimony.** Subject to the provisions of Section 9 of this Order, all deposition testimony in this case is designated Protected Material and all transcripts of

2

deposition testimony shall be marked "CONFIDENTIAL - CONTAINS PROTECTED MATERIAL – SUBJECT TO AAA PROTECTIVE ORDER," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – PHI," as appropriate.

     c.    **Outside Attorneys' Eyes Only.**  A party may designate Protected Material as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" if that information (a) is kept confidential by the designating party, and is not generally known or otherwise publicly available, and (b) its disclosure would likely cause competitive harm to the designating party, or its disclosure is prohibited by regulatory obligations or a party's contractual obligations to a third party.   Documents, deposition testimony, or any portion thereof designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" pursuant to this paragraph, may be reviewed only by:  (i) outside counsel for a party; and (ii) other individuals as set forth in Section 5.c. of this Order.

**3.    Special Provisions Governing Patient Health Information**

     a.    All "covered entities" (as defined by 45 C.F.R. § 160.13) are hereby authorized to disclose protected health information pertaining to this matter to attorneys representing the parties in the above-captioned litigation.

     b.    PHI may be subject to the provisions of the Privacy Act, 5 U.S.C. § 552a, to the provisions of 45 C.F.R. §§ 164.102–164.534, or to the provisions of 42 U.S.C. § 1306, or there may be no waiver by the patient to produce the records to any entity outside the party to whom it was produced.

     c.    A producing party may in good faith designate documents, deposition transcripts, and other tangible things as PHI by clearly marking "CONFIDENTIAL – PHI" on each page thereof, on the first page of a multi-page document, on the face of the tangible item itself, in the

3

load file of an electronic document, or by providing a separate written notice to counsel designating the document or tangible items as PHI. Any document or portion thereof designated "CONFIDENTIAL – PHI" pursuant to this paragraph shall be treated as Protected Material, as well as the information contained therein. For documents and tangible things containing PHI of individuals who are not clients of MCHO, Navitus shall make reasonable efforts to redact all PHI from the documents or things prior to production to MCHO. In the event one of the parties wishes to disclose documents, deposition transcripts, or other things containing unredacted PHI in a manner that would be prohibited by this Order due to the presence of the PHI, the parties shall cooperate in good faith to agree to appropriate redactions of those documents. Any disputes regarding redactions of PHI shall be resolved pursuant to the procedure set forth in Section 9 of this Agreement.

      d.    The receiving parties, including their counsel, may use Protected Material designated CONFIDENTIAL – PHI only for purposes of the litigation, and may disclose it to nonparties to this litigation only as needed for the litigation, and only if the nonparty signs the form of acknowledgment attached to this Order. The receiving party shall not file these documents with or submit them to the Panel or reproduce their contents in any filing in this proceeding unless the party makes the filing under seal or the PHI is redacted from the filing.

      e.    Nothing in this Order authorizes counsel for the parties to obtain medical records or information through means other than formal discovery requests, subpoenas, depositions, pursuant to a patient authorization, or other lawful process.

**4.**    **Protection of Protected Material.** Protected Material shall not be used or disclosed by the parties, counsel for the parties, or any other persons for any purpose whatsoever other than in this

4

litigation or any appeal thereof.  Protected Material shall not be disclosed to third parties except as provided in paragraph 5 below.

5.      **Limited Third Party Disclosures.**   The parties, counsel for the parties, or anyone else subject to this Order, including any signatories to Attachment A to this Order, shall not disclose or permit the disclosure of any Protected Material to any third person or entity except as set forth below:

      a.      If the Protected Material is PHI, efforts should first be made, if practicable, to conceal any PHI by coding the documents to substitute a numerical or other designation for the patient's name or other identifying information, or otherwise redact the information as provided in Section 3.c. of this Order.

      b.      Prior to disclosing Protected Material to persons identified in (c) below, counsel shall inform each such person that the Protected Material may not be used or disclosed for any purpose other than this litigation.  In particular, with regard to PHI, counsel shall take all other reasonable steps to ensure that persons receiving PHI do not use or disclose such information for any purpose other than this litigation.

      c.      Subject to these requirements, the following categories of persons may be allowed to review Protected Material.

          i.      Outside Counsel.  Outside Counsel for the parties and their employees who are engaged in this litigation;

          ii.      Parties.  Individual parties and employees of a party, but only to the extent the Protected Material is not designated OUTSIDE ATTORNEYS EYES ONLY and counsel determines in good faith that the employee's review of the Protected Material is reasonably necessary to the conduct of the litigation in which the information is disclosed;

4837-1768-1019.3

iii.      The Panel and AAA personnel assigned to assist in this proceeding;

iv.      Court Reporters;

v.      Contractors. Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents, but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound;

vi.      Consultants and Experts.  Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action, who are not employed by and do not provide consulting services for a competitor of a party, but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound.  Such consultants and experts may review materials designated OUTSIDE ATTORNEYS EYES ONLY where counsel determines in good faith that review of such material is reasonably necessary to the conduct of the litigation;

vii.      Third-Party Witnesses at Depositions.  During their depositions, witnesses in this action to whom disclosure is reasonably necessary, but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound.  Witnesses shall not retain a copy of documents containing Protected Material, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts.

viii.      Author or recipient. The author or recipient of the document (not including a person who received the document in the course of litigation); and

ix.      Others by Consent. Other persons only by written consent of the producing party or upon order of the Panel and on such conditions as may be agreed or ordered.

6.      **Control of Documents.**  Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Protected Material.  Counsel shall maintain the originals of the forms (or electronic copies thereof) signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

7.      **Inadvertent Failure to Designate.**  An inadvertent failure to designate a document or thing as Protected Material does not, standing alone, waive the right to so designate the document or thing.  If a party designates a document or thing as Protected Material after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document or thing is treated in accordance with the provisions of this Order.  No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Protected Material, even where the failure to so designate was inadvertent and where the material is subsequently designated Protected Material.

8.      **Filing of Protected Material.**  All documents filed with the Panel that contain Protected Material and are marked as "CONFIDENTIAL - CONTAINS PROTECTED MATERIAL – SUBJECT TO AAA PROTECTIVE ORDER," "CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PHI" shall be deemed filed under seal and treated accordingly.

9.      **Challenges by a Party to Designation as Protected Material.** The designation of any material or document as Protected Material is subject to challenge by any party.  The following procedure shall apply to any such challenge.

7

a.      **Meet and Confer.**  A party challenging the designation of Protected Material must do so in good faith and must begin the process by conferring directly with counsel for the designating party.  In conferring, the challenging party must state in writing the basis for its belief that the confidentiality designation is not proper and explain what purpose would be served by changing the designation.  The designating party must have an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation.  The designating party must respond to the challenge within five (5) court days, unless the volume of material at issue makes that deadline unreasonable, in which case the parties shall cooperate in good faith to establish a reasonable deadline.

b.      **Panel Chair Intervention.**  A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge, including the purpose that would be served by changing the designation.  Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure.  The burden of persuasion in any such challenge proceeding shall be on the designating party.  Until the Panel Chair rules on the challenge, all parties shall continue to treat the materials as Protected Material under the terms of this Order.

c.      **Action by the Panel Chair.**  Applications to the Panel Chair for an order relating to materials or documents designated Protected Material shall be by motion.  Nothing in this Order or any action or agreement of a party under this Order limits the Panel's power to make orders concerning the disclosure of documents produced in discovery or at a hearing.

8

**10.**   **Use of Confidential Documents or Information at Hearings.**   Nothing in this Order shall be construed to affect the use of any document, material, or information at any hearing.   A party that intends to present or that anticipates that another party may present Protected Material at a hearing shall bring that issue to the Panel Chair's and the parties' attention by motion or in a prehearing memorandum without disclosing the Protected Material. The Panel Chair may thereafter make such orders as are necessary to govern the use of such documents or information at a hearing.

**11.**   **Protected Material Subpoenaed or Ordered Produced in Other Litigation.**

a.   If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Protected Material, the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order.   Such notification must include a copy of the subpoena or court order.

b.   The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order.   In addition, the receiving party must deliver a copy of this Order promptly to the parties in the other action that caused the subpoena to issue.

c.   The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Protected Material in the court from which the subpoena or order issued.   The designating party shall bear the burden and the expense of seeking protection in that court of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.   The

9

obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Protected Material by the other party to this case.

4837-1768-1019.3

12.     **Obligations on Conclusion of Litigation.**

a.     **Order Continues in Force.**  Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

b.     **Obligations at Conclusion of Litigation.**   All Protected Material, including copies, shall be returned to the producing party or destroyed within sixty days after the later of: 1) the Panel's final written decision in this proceeding; or 2) if an appeal is taken, the entry of a final non-appealable judgment terminating these proceedings.

c.     **Retention of Work Product and one set of Filed Documents.**  Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product, including an index that refers or relates to designated Protected Material so long as that work product does not duplicate verbatim substantial portions of Protected Material, and one complete set of all documents filed with the Panel including those filed under seal.  Any retained Protected Material shall continue to be protected under this Order.  All retained work product and documents filed with the Panel that contain Protected Material shall be retained solely for archival purposes and shall not be used or referenced for purposes of any subsequent litigation.

**13.     Persons Bound.**  This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

Dated: _2/7/2019_

_Myra C. Selby_

Myra C. Selby
Panel Chairperson
On behalf of Panel

4837-1768-1019.3

ATTACHMENT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Protective Order dated _____, 2018, in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms.   The undersigned shall not disclose any information designated as "CONFIDENTIAL - CONTAINS PROTECTED MATERIAL – SUBJECT TO AAA PROTECTIVE ORDER," "CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – PHI" and shall not use such information other than in assisting counsel in this proceeding.   The undersigned submits to the jurisdiction of a court of competent jurisdiction for the purpose of enforcement of the Protective Order against him/her.   The undersigned understands that his/her obligations under the Protective Order survive and continue beyond the termination of the above-referenced arbitration.

Name (printed):

Job Title:

Employer:

Business Address:

Date:

Signature:

4837-1768-1019.3

# EXHIBIT E



November 15, 2019

**<u>Via Email & Regular Mail</u>**
Jacinta L. Alves
Crowell Moring
1001 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2595
JAlves@crowell.com

Re:   **In the Matter of the Arbitration between Maine Community Health Options v. Navitus Health Solutions/Subpoena to Albertsons Companies, Inc. dated October 15, 2019 (the "Subpoena")**

Dear Ms. Alves:

This is a response to your letter to me dated November 14, 2019.

Over the course of the last year, Maine Community Health Options ("MCHO") has persistently exercised means and methods to obtain information from Albertsons Companies, Inc. or its subsidiaries (collectively "Albertsons") that are inappropriate and exceed the authority of the arbitrators under the Federal Arbitration Act ("FAA"). On this point, Albertsons' objections have largely been ignored. While MCHO may have made minor modifications to the Subpoena, the parties have had minimal conversations about Albertsons' specific objections and many specific objections have been unaddressed. After more than a year, notwithstanding Albertsons' objection to the authority of the arbitrators to issue the Subpoena, and Albertsons' clear position that it would not respond to the Subpoena absent a court order—from a court in Idaho, not Wisconsin—MCHO has yet to bring a motion to compel.

The arbitration panel has authority to issue a subpoena *only* in the context of a hearing, and not for pre-hearing discovery. To the extent the authority you cite is contrary to the law in the Ninth Circuit, it is hereby rejected. <u>CVS Health Corporation v. Vividus, LLC</u>, 878 F.3d 703 (9th Cir. 2017).

I stand by my characterization of MCHO's proposed "hearing" to receive any information that Albertsons might produce. Not every fact is a characterization of your express statements, but nevertheless they are a fair characterization of what is implicit in what you said or did not say. Albertsons will not produce information *before* a hearing because the arbitrators have no authority to compel a pre-hearing production. While the arbitrators may convene the hearing ostensibly for the purpose of hearing testimony or ruling on evidentiary objections, that is ancillary to the primary task in this instance which will consume the time and energy of the moment. The bulk of the time will be taken up by a review of the data which could take hours. It cannot be disputed that while MCHO conducts this review, the arbitrators and an Albertsons witness—and the scheduled court reporter—will stand idly by waiting for the review to be completed. During this time period, no "hearing" will be taking place. The period taken to review the information is not a hearing as contemplated under applicable law. Consequently, MCHO's claim that this is a hearing, to legitimize the Subpoena, is a fiction.

Working together to be the *favorite local supermarket*™



















My statement that "many of the participants are only participating by telephone" is accurate; I did not attribute the statement to you.  While you have represented that the arbitrators will be physically present, and I have not disputed that, you acknowledge that Navitus Health Solutions' ("Navitus") counsel will participate by phone.  Additionally, you mentioned that MCHO's experts will be "on call," available to consult with MCHO.  You did not say that they will attend. Accordingly, I understood that they would not be present but would participate remotely and you have not asserted otherwise in your letter.  If only the arbitrators and MCHO attend, not all participants are present.  If MCHO does not intend to spend sufficient time reviewing any data produced, then MCHO will not be in any position to take substantive testimony from an Albertsons witness, and questions that go only to authentication are merely pretext to surreptitiously obtain the data.  Solely asking authentication questions makes the hearing inconsequential and unnecessary.  A third party should not be burdened under such circumstances, thus evidencing the importance of limiting the arbitrators' authority.

Again, Albertsons stands by its assertion that it is not mentioned in the Arbitration Demand, as are other drug retailers.  Thus, information from Albertsons is not necessary to prove MCHO's claims against Navitus.  In any event, in adjudicating claims with Navitus, Albertsons transmitted its "usual and customary" price—the price charged to cash paying customers.  Consequently, Navitus already has this data element and can produce the data, if it has not already, without MCHO resorting to third party discovery from Albertsons.  As a general matter, however, MCHO's claims are flawed.  MCHO's whole theory of its case presupposes practices and conventions that the industry does not follow and are not technically feasible.  Under current NCPDP standards, there is no mechanism to transmit third party discount prices, or Albertsons' discount prices under the myRxCare program—which are not usual and customary prices—in adjudicating a claim with Navitus.  Claims under such programs are not adjudicated as cash transactions.

Albertsons has no objection to the Protective Order.  However, Albertsons continues to object that the information MCHO seeks is largely irrelevant and not proportional to the needs of the case.

Albertsons will oppose any motion to compel the production of any information called for by the Subpoena and will not produce any information absent a court order.

Very truly yours,
Albertsons Companies, Inc.

Daniel S. Day
Vice President, Litigation &
Regulatory Compliance

2